James **THOMPSON**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 54186.

Court of Criminal Appeals of Texas. Panel No. 2.

March 22, 1978.

McBryde, Bogle & Green, John McBryde, Fort Worth, for petitioner.

Scarsborough, Black, Tarpley & Scarborough, J. R. Black, Jr., Abilene, Byrd, Davis, Eisenberg & Clark, Austin, Brown, Crowley, Simon & Peebles, Fort Worth, for respondents.

E. M. Bill Jordan, Kaufman, court appointed, for appellant.

Arthur Miller, C. A., Kaufman, for the State.

## OPINION

Before ONION, P. J., and DOUGLAS and ODOM, JJ.

DOUGLAS, Judge.

This is an appeal from a conviction for the offense of burglary under V.T.C.A., Penal Code, Section 30.02(a)(1). The jury, having found that appellant had a previous noncapital felony conviction, assessed his punishment at twenty-five years.

The indictment alleges, in part, that on June 26, 1975, appellant "intentionally and knowingly and without the effective consent of Earnest Oatman, the owner thereof, enter a building not then and there open to the public, with intent to commit theft, to wit: with intent then and there to obtain property unlawfully from Earnest Oatman, without the effective consent of Earnest Oatman, the owner of said property, and with intent to deprive the said owner of said property, and that said building was then and there a habitation occupied by the said Earnest Oatman; . . ."

The jury found that these allegations were true and returned a verdict of guilty. Appellant contends the evidence is insufficient to support the verdict.

Ernest Oatman testified that on June 26, 1975, he lived in a house located at 305 East Temple Street in Terrell. He stated that he was at home for most of that day but at 4:30 or 5:00 o'clock in the afternoon he went to Levi Payne's house which was located at a distance of about one and one-half blocks from Oatman's house. Oatman could see his home clearly from Payne's house. Oatman stated that while he was there he saw appellant leaving the premises of Oatman's home. Appellant was proceeding across the road into a vacant field directly across the street from Oatman's house. Oatman related that appellant was carrying something in his hands.

Oatman further testified that he immediately got into his truck and drove home. He saw appellant's pickup truck on the wrong side of the road. It was parked in the vacant field. Oatman stated that he then observed appellant hiding in the grass by the pickup truck. The grass was high and was capable of camouflaging the truck.

Oatman stated that he went to a friend's house on the next street and asked some people there whether they had observed appellant in the neighborhood and, if so, whether he was carrying anything. They replied that they had not seen him. At that time appellant got into his truck and drove

away at a high rate of speed. Oatman testified that he returned to his house and discovered that someone had kicked in the back door and entered the home. The burglar had taken two shotguns, a rifle, barber clippers and several musical tapes. Oatman then called the police.

Oatman further testified that he had known appellant for seven or eight years and that appellant had occasionally worked for him. Oatman stated that his house was a private dwelling and that it was closed and locked when he left it to go to Payne's home. Oatman had not given anyone permission to enter his house.

On cross-examination, Oatman testified that he observed appellant leaving the premises of Oatman's house and walking toward a "weed patch" in the vacant field. Oatman testified that he did not see appellant come out of the house, however. Oatman reiterated that appellant was carrying something, but Oatman was unable to determine whether it was a gun or a suitcase. Thereafter, while Oatman was talking to some neighbors, appellant "jumped in his truck and left the scene going to town. . . ." Oatman also stated that Officer Pitts recovered some of the stolen items in the weeds growing in the vacant field.

Oatman testified on re-direct that the tape carrying case taken from his house was designed to hold twelve musical tapes. The case was full when it was stolen. It had the appearance of a small suitcase. He further testified that he was watching his house while he was at Payne's house from a chair in Payne's front yard. During that time, Oatman saw no one other than appellant near or around his house or the field across the street.

Martin Pitts testified that he was an administrative officer with the Terrell Police Department on the date in question and that he and Officer Kerry investigated the burglary. Pitts stated that he found a fresh trail in the grass and weeds in the vacant field where someone had recently walked. The trail was plain because the surrounding weeds were "waist high." During the search of the field Pitts discov-

ered a .22 calibre rifle and two carrying cases. One of the cases contained ten or twelve "eight-track" musical tapes and the other contained hair clippers and other barber tools. The items were laying in close proximity to each other.

Pitts further testified that Ernest Oatman owned the items and that they were returned to him. Pitts stated that he started searching the field and found the footprints there because Oatman had told Officer Kerry that he (Oatman) had seen someone traversing it.

Pitts confirmed on cross-examination that Levi Payne's house was not more than one and one-half blocks from Oatman's house. The Payne home faced west and the Oatman home faced south. Pitts stated on re-direct that the view between the two houses was not obstructed because that area was not densely populated.

Pitts testified that he did not find any type of shotgun. He also stated that he did not see any indication that anyone had been lying or hiding in the weeds where he found the footprints.

Thelma Hardin testified that she lived near the corner of Temple and Delvine Streets, about thirty-five feet from Ernest Oatman's house. At five o'clock p. m. on the day in question she was working in her garden. As she went to a water hydrant to wash her hands she saw appellant leaving Oatman's yard. He was walking toward Temple Street and carrying a small "case." Hardin testified that she knew appellant personally and that she had not seen anyone else near Oatman's house within the preceding two hours.

Hardin stated on cross-examination that she had not seen appellant go into or come out of the house. She again stated that she had observed him walking through Oatman's yard. Hardin further stated that Oatman directed his "car parts" business from his house and that it was not unusual for various people to come to the house.

Levi Payne testified that he was sitting with Oatman on his front lawn when he observed someone leaving the premises

where Oatman lived. Payne determined that the person was carrying something or things which Payne believed were tires. Payne stated that Oatman said "that's James Thompson" and got up and left. Payne admitted on cross-examination that he ordinarily wore glasses but was not wearing them during the incident he described.

William Kerry testified that he was a reserve police officer and that he investigated the burglary. He discovered that Oatman's back door had been kicked in and that there were several items missing from the home. Kerry related that Oatman had told him that appellant was the burglar.

On cross-examination, Kerry testified that he noticed a distinct path through the vacant field across from Oatman's house where the grass was knee to waist high. Kerry stated that Pitts found the stolen rifle and carrying cases in the field but did not find the two shotguns. Afterwards, Kerry and Pitts searched the field again but found nothing.

■ The State relies upon circumstantial evidence to sustain the conviction. A conviction on circumstantial evidence cannot be sustained if the circumstances do not exclude every other reasonable hypothesis except that of the guilt of the accused, and proof amounting only to a strong suspicion or mere probability is insufficient. *Young v. State,* 544 S.W.2d 421 (Tex.Cr.App.1976); *Indo v. State,* 502 S.W.2d 166 (Tex.Cr.App. 1973). Further, in determining whether the incriminating circumstances are sufficient to support a conviction, each case must necessarily be tested by its own facts. *Young v. State,* supra; *Moore v. State,* 532 S.W.2d 333 (Tex.Cr.App.1976).

■ In the instant case, many incriminating circumstances connect appellant with the burglary. During the limited amount of time that the entry in Oatman's dwelling could have been made, appellant was observed walking away from the scene and carrying a small case. No other person was observed in the area. While presence at the scene of the offense, without more, is insuf-

ficient to support a burglary conviction, it is a circumstance tending to connect one with the crime and taken in conjunction with other facts may be sufficient to show that he is guilty. *Morgan v. State,* 503 S.W.2d 770 (Tex.Cr.App.1974); *Torres v. State,* 491 S.W.2d 126 (Tex.Cr.App.1973).

■ In addition to appellant's presence at the scene, there was evidence of flight, a circumstance tending to show a guilty consciousness. *See Arivette v. State,* 513 S.W.2d 857 (Tex.Cr.App.1974). Moreover, three items taken in the burglary were found in the field near where appellant was observed sitting and, perhaps, hiding. Viewing this evidence as a whole and in the light most favorable to the jury's verdict, we conclude that the circumstances exclude every reasonable hypothesis except that of appellant's guilt and that the proof is sufficient to support the verdict. *Cf. Morgan v. State,* supra.

■ In his second ground of error, appellant contends that the evidence offered at the punishment phase of the trial was insufficient to prove the prior conviction relied upon by the State for enhancement purposes. The indictment alleges, in part:

"And prior to the commission of the aforesaid offense by the said James Thompson, on the 17th day of October, 1972, in the 86th Judicial District Court of Kaufman County, Texas, in Cause No. 12,699 on the docket of said court the said James Thompson was duly and legally convicted in said last named court of a felony less than capital, to wit, Burglary, upon an indictment then legally pending in said last named court and of which said court had jurisdiction; and said conviction was a final conviction and was a conviction for an offense committed by him, the said James Thompson, prior to the commission of the offense hereinbefore charged against him, as set forth in the first paragraph;"

During the punishment phase, Mrs. Ray Vick testified that she was the Kaufman County District Clerk and that she was serving in the same capacity on October 17, 1972. She stated that she was present in

the courthouse on that date when appellant was found guilty in Cause No. 12,699 for the felony offense of burglary. Vick testified that the 86th Judicial District Court of Kaufman County entered a judgment and sentence in that cause on October 19, 1972. She related, however, that the docket sheet showed the documents were entered on October 17. Vick further testified that the conviction became final prior to June 26, 1975, the date of the primary offense, and that the pertinent papers were sent to the Texas Department of Corrections.

Arthur Miller was the District Attorney for Kaufman County. Miller testified that he was the County Attorney for the same county on October 17, 1972. He stated that he was present in court on that date when appellant pleaded guilty in Cause No. 12,699 to the offense of burglary, a noncapital felony. Miller further stated that the conviction was final prior to the offense alleged in the present indictment.

This Court has consistently held that a prior conviction is properly proved by introducing into evidence the indictment in the prior cause and the authenticated copies of the records of the Texas Department of Corrections including the certified copies of the judgment and sentence, a "mug shot", and a set of fingerprints, and by then having a fingerprint expert testify that such set of fingerprints matched one recently taken from the defendant. *See Rinehart v. State,* 463 S.W.2d 216 (Tex.Cr.App.1971), and the authorities cited therein.

In *Morgan v. State,* 515 S.W.2d 278 (Tex. Cr.App.1974), a witness who had testified in another prosecution of the accused stated that the jury had returned a guilty verdict and assessed his punishment at three years, and another witness testified that the accused had been imprisoned. We held that this testimony was insufficient to establish a prior final conviction because there was no evidence the prior trial court had entered judgment and sentenced the accused. We reasoned that, even if the testimony proved a judgment of conviction, without a showing that the accused had been sentenced there would be no proof of the finality of that conviction.

In the instant case, however, it was established by the testimony of the Kaufman County District Clerk and of the District Attorney that the trial court had properly entered a judgment and sentence in Cause No. 12,699 wherein appellant had pleaded guilty to the offense of burglary, a felony less than capital. It was further established that the conviction had become final prior to the date of the primary offense, and that the penitentiary papers had been sent to the Department of Corrections. Since the State did not introduce the indictment or the authenticated copies of the judgment and sentence in Cause No. 12,699, the testimony of the District Clerk and District Attorney would certainly have been subject to an objection on "best evidence" grounds. However, appellant made no objection of any kind to the testimony offered by the State. In the absence of an objection, we hold that the evidence admitted at the punishment stage was competent and sufficient to prove the prior, final, noncapital felony conviction in Cause No. 12,699 as alleged in the indictment.

We further hold that there is no fatal variance between the allegations in the indictment and the proof. The State alleges that the prior conviction was final on October 17, 1972, whereas the proof shows that the conviction was final on October 19, 1972, the date of the judgment and sentence. However, the District Clerk testified that the docket sheet showed, apparently incorrectly, that the judgment and sentence were entered on October 17. Appellant filed no motion to quash or exception to the indictment and there is no indication that he was misled or otherwise harmed.

No error is shown. The judgment is affirmed.