NUMBER 13-05-246-CR


COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


JOSE RENATO BERMUDEZ, Appellant,


v.


THE STATE OF TEXAS, Appellee.

 
 

On appeal from the 230th District Court of Harris County, Texas

 


MEMORANDUM OPINION


Before Chief Justice Valdez, and Justices Rodriguez and Garza


Memorandum Opinion by Justice Garza
 Appellant, Jose Renato Bermudez, was convicted by a jury of arson of a habitation
and sentenced to seven years' imprisonment. See Tex. Pen. Code Ann. § 28.02 (Vernon
Supp. 2006). By two issues, appellant argues that the evidence is legally and factually
insufficient to sustain his conviction. We affirm.

Background

 Appellant and Wilfredo Moreno met in October 2003 while attending the same
church. In November 2003, appellant and Moreno entered into a verbal agreement by
which appellant rented one of Moreno's residential properties for $300 a month. (1) Moreno
testified that on May 16, 2004, he asked appellant to leave the property because, although
appellant had lived on the property since November 2003, appellant had paid only one
month's rent. According to Moreno, appellant promised he would move out the next day. 

 Appellant testified that he and Moreno had a single dispute during his tenancy
involving a window that was broken. The window broke when appellant's boss, Isaac,
knocked on it. (2) Appellant stated that he did not fix the window but instead used plywood
to cover it. Appellant testified that he told Moreno he was going to leave and Moreno
replied "leave." However, appellant testified that he did not intend to leave until the end of
the month because he planned to go to Miami on May 31. 

 While at work on May 17, 2004, Moreno received a phone call informing him that his
home was on fire. When he arrived at his home, he found firefighters putting out the fire
and learned that his son was home at the time of the fire and had to jump from the second
floor to escape the fire. Arson investigators, Byron Miller, Gregory Chapa, Juan Garcia, and
Robert McClain along with his canine partner "Yoochie," investigated the scene and
discovered that the fire most likely began at the top of the exterior staircase on the south
side of the building and moved downward. (3) The investigators ruled out any potential
accidental source of ignition and concluded that the fire was intentionally set and that an
unknown accelerant was used to ignite the fire. Jim Frank Swindall with the State Fire
Marshall's office testified that analysis of the debris collected at the scene showed that the
fire had been started with a medium petroleum distillate. (4) 

 At trial, two witnesses testified that, shortly before the fire, they saw appellant near
Moreno's property. Andrew Contreras was cutting grass at a home nearby when he saw
appellant on a bicycle carrying a milk jug containing what appeared to be gasoline. 
Contreras testified that the house caught on fire about ten seconds after he saw appellant
near the property. Dandre Dennis, whose cousin was also a resident at the Moreno
property, testified that he was driving in the area when he saw appellant sitting on a bicycle
and carrying a milk jug full of a light-gold colored liquid which he believed to be gas. Dennis
stated that appellant was riding the bicycle towards Moreno's house. 

 Moreno testified that about three hours after the fire, appellant called him and asked
if the house had completely burned down. About an hour and a half later, appellant called
Moreno a second time and threatened that if Moreno pressed charges against him for
setting the fire, it would be worse for Moreno and his family after he got out of jail. 
Appellant's cousin, Carmen Villegas, testified that on the morning of the fire, appellant came
by her house and told her an accident had occurred. Appellant told Villegas that he had
been smoking at Moreno's property and that a gas leak caused a fire to ignite. Villegas
testified that appellant was very frightened and nervous. 

 Appellant testified that on the morning of the fire, he worked with Isaac from about
6:35 a.m. to 7:50 a.m. at a house on Hardy Street. Appellant left after one hour of working
because of a toothache. He walked back to his residence at the Moreno property and
arrived there at about 8:30 a.m. Appellant changed clothes, and about ten to twelve
minutes later, appellant proceeded to his aunt's house to look for medication. On his way
to his aunt's, an individual named Mario Cruz approached appellant and asked appellant
to help install a wooden floor at his house. Appellant allegedly spent the rest of the day at
Cruz's home until he was arrested that evening. In his testimony, appellant admitted to
owning a bicycle but denied using it on the day in question. He also denied going over to
his aunt's house and telling her that he had accidentally ignited a fire. Appellant further
denied calling Moreno on the day of the fire. 

 The jury returned a guilty verdict and assessed punishment at seven years in the
Institutional Division of the Texas Department of Criminal Justice. This appeal ensued.

Standard of Review

 In a legal sufficiency review, we consider all of the properly or improperly admitted
evidence in the light most favorable to the verdict and determine whether, based on that
evidence and reasonable inferences therefrom, a rational jury could have found the
accused guilty of the essential elements of the offense beyond a reasonable doubt. 
Jackson v. Virginia, 443 U.S. 307, 319 (1979); Swearingen v. State, 101 S.W.3d 89, 97
(Tex. Crim. App. 2003) (en banc). We measure the legal sufficiency of the evidence by the
elements of the offense as defined by a hypothetically correct jury charge. Malik v. State,
953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically correct jury charge is one
that accurately sets out the law, is authorized by the indictment, does not unnecessarily
increase the State's burden of proof or restrict its theories of liability, and adequately
describes the particular offense for which the defendant was tried. Id.

 In a factual sufficiency review, we view the evidence in a neutral light and ask
whether a jury was rationally justified in finding guilt beyond a reasonable doubt. See
Watson v. State, 204 S.W.3d 404, 414-17 (Tex. Crim. App. 2006). We then determine
whether the evidence supporting the verdict is so weak that the verdict is clearly wrong and
manifestly unjust or whether the verdict is against the great weight and preponderance of
the conflicting evidence. Id. at 415. We will not reverse a case on a factual sufficiency
challenge unless we can say, with some objective basis in the record, that the great weight
and preponderance of the evidence contradicts the jury's verdict. Id. at 417. 

 Under both legal and factual sufficiency standards, the fact-finder is the exclusive
judge of the witnesses' credibility and the weight to be given to their testimony. See
Swearingen, 101 S.W.3d at 97; Cain v. State, 958 S.W.2d 404, 408-09 (Tex. Crim. App.
1997). The jury is in the best position to evaluate the credibility of the witnesses, and our
factual-sufficiency jurisprudence still requires an appellate court to afford "due deference"
to the jury's determinations. Marshall v. State, 210 S.W.3d 618, 625 (Tex. Crim. App.
2006). Although the reviewing court is permitted "to substitute its judgment for the jury's"
when considering credibility and weight determinations, it may do so only "to a very limited
degree." Marshall, 210 S.W.3d at 625 (citing Watson, 204 S.W.3d at 417). 

Applicable Law

 To obtain a conviction for arson, the State was required to prove beyond a
reasonable doubt that appellant started a fire intending to damage or destroy a habitation
knowing that the habitation was located within the incorporated city limits of a town. See
Tex. Pen. Code Ann. § 28.02(a). 

Analysis

 On appeal, appellant contends the evidence was legally and factually insufficient to
prove that the fire that consumed Moreno's home was intentionally set and that he was the
one who set the fire. Appellant's first issue on appeal challenges the legal sufficiency of the
evidence.

 In the present case, the arson investigators concluded the fire started on an outdoor
staircase and that there was nothing in the area that could have accidentally led to a fire. 
The investigators all agreed the fire was intentionally set. In addition, canine investigator
"Yoochie" alerted to the scent of accelerant at the scene. Laboratory analysis of debris
collected from the staircase and the surrounding area revealed that an accelerant had been
used to ignite the fire. Viewing this evidence in the light most favorable to the verdict, we
conclude a jury could rationally conclude that the fire was intentionally set.

 Appellant also contends that the evidence was legally insufficient to prove that he set
the fire. He argues that the circumstances in this case merely establish his presence at the
scene. See Thomas v. State, 645 S.W.2d 798, 800 (Tex. Crim. App. 1983). It is true that
evidence of appellant's presence at the scene of the house fire shortly before the fire was
discovered does not by itself prove that appellant set the fire. See id. (recognizing that
presence of accused at scene of offense is not alone sufficient to support conviction); see
also O'Keefe v. State, 687 S.W.2d 345, 349 (Tex. Crim. App. 1985). However, presence
is "a circumstance tending to prove guilt" which, combined with other facts, may suffice to
show that the accused committed the offense. See Thomas, 645 S.W.2d at 800. Here, the record reveals more than appellant's mere presence at Moreno's property. 
Two witnesses testified that they saw appellant near Moreno's property shortly before the
fire carrying a milk jug containing what appeared to be gasoline. Moreno testified that
appellant called him to ask if his house had completely burned down and that appellant had
threatened Moreno in an effort to deter him from pressing charges. Appellant's cousin
testified that appellant told her he had accidentally set Moreno's property on fire. In
addition, appellant was found in possession of a lighter when he was arrested later that day. 

 Although the State's evidence that appellant ignited the fire was circumstantial, that
evidence is as probative as direct evidence. See Guevara v. State, 152 S.W.3d 45, 49
(Tex. Crim. App. 2004). After analyzing the evidence in the light most favorable to the
prosecution, giving due regard to the fact finder's resolution of any issue of inconsistencies
in evidence and credibility of the witnesses, we cannot say that a rational trier of fact could
not have found appellant guilty beyond a reasonable doubt. Jackson, 443 U.S. at 319;
Swearingen, 101 S.W.3d at 97. 

 As a sub-issue in his legal sufficiency challenge, appellant contends the evidence
is legally insufficient because the State failed to "prove either a prima facie showing that the
manner and means were unknown to the grand jury or that it used due diligence in
concluding the manner and means was unknown." Citing Hicks v. State, 860 S.W.2d 419,
424-25 (Tex. Crim. App. 1993) and Matson v. State, 819 S.W.2d 839, 847 (Tex. Crim. App.
1991), appellant argues that, because the indictment alleged that the manner and means
of starting the fire was unknown, the State had to prove that the manner and means were
unknown or that the grand jury used due diligence in concluding the manner and means
was unknown. 

 The court of criminal appeals, however, has expressly disavowed the "due diligence"
rule cited by appellant. See Gollihar v. State, 46 S.W.3d 243, 253 (Tex. Crim. App. 2001);
In re A.J.G., 131 S.W.3d 687, 694-95 (Tex. App.-Corpus Christi 2004, pet. denied); Fagan
v. State, 89 S.W.3d 245, 249 (Tex. App.-Texarkana 2002, pet. ref'd) ("The rule requiring
the state to show that the grand jury exercised due diligence in determining the
instrumentality of the offense is no longer relevant to our analysis."). A non-essential
element of the charge, such as an allegation that the object used to cause damage or injury
was unknown to the grand jury, may properly be excluded from a hypothetically correct jury
charge. In re A.J.G., 131 S.W.3d at 694; see Malik, 953 S.W.2d at 239-40. So long as the
essential elements of the crime charged have to be found by the jury in order for a guilty
verdict to be returned, the State does not have to additionally and separately prove the good
faith and due diligence of the grand jury in determining non-essential elements of the
charge, such as what kind of accelerant was used. See Malik, 953 S.W.2d at 240; In re
A.J.G., 131 S.W.3d at 694. Accordingly, we overrule appellant's sub-issue.

 We hold that the evidence is legally sufficient to support appellant's conviction for
arson of a habitation. Appellant's first issue is overruled. Having concluded the evidence
was legally sufficient, we next address appellant's second issue challenging the factual
sufficiency of the evidence. 

 We begin our review by discussing the evidence that appellant claims demonstrates
a factually insufficient basis for the jury verdict. See Sims v. State, 99 S.W.3d 600, 603
(Tex. Crim. App. 2003). In his factual sufficiency challenge, appellant argues that the
evidence in this case is "lacking and inconclusive" and is only sufficient to allow for
suspicion of guilt. Appellant does not discuss any specific evidence that undermines the
jury's verdict. Nonetheless, after reviewing appellant's brief, the only arguable contrary
evidence is appellant's denial that he set the fire. In addition, appellant contends that the
evidence is insufficient because (1) the State offered no witnesses who saw him leaving the
scene of the fire or in the area after the fire was ignited, (2) the State failed to offer a motive,
and (3) he was not found in possession of a jug or anything else to connect him to the fire. 
Although appellant testified that he did not start the fire, it was within the jury's province to
weigh his credibility and disregard his testimony. See Swearingen, 101 S.W.3d at 97; Cain,
958 S.W.2d at 408-09. Further, appellant's argument that the State failed to present eye
witnesses who saw him at the scene of the fire is wholly without merit. As previously
discussed, the State presented the testimony of two witnesses who saw appellant near
Moreno's property shortly before the fire. To the extent appellant argues that the witnesses
were lying, we reiterate that the fact-finder is the exclusive judge of the witnesses' credibility
and the weight to be given to their testimony. Swearingen, 101 S.W.3d at 97; Cain, 958
S.W.2d at 408-09. Clearly, the jury chose to disbelieve appellant and to instead believe the
testimony of the witnesses. Further, appellant's argument that the evidence is insufficient
because the State failed to offer a motive is also without merit. Motive is not an element
of arson. See Tex. Pen. Code Ann. § 28.02. In any event, the testimony presented to the
jury that Moreno asked appellant to leave the property for failure to pay rent and testimony
that appellant and Moreno had a dispute about a broken window tends to show that
appellant had a motive to commit arson. 

 In addition, although appellant contends the evidence was factually insufficient
because he was not found in possession of a jug or any other incriminating evidence, the
evidence presented at trial demonstrated that appellant was seen near Moreno's property
carrying a milk jug filled with what appeared to be gasoline. Further, the testimony of
Investigator Chapa revealed that a lighter was found in appellant's possession. In
response, appellant explained that he carried a lighter because he was a smoker. We
further note that appellant also contends the evidence is insufficient because gasoline was
eliminated as a possible source of accelerant used in igniting Moreno's property. Swindall
did testify that analysis of the debris collected at the scene showed that the fire had been
started with a medium petroleum distillate. He also testified that the test results revealed
no use of gasoline, kerosine, or diesel fuel. Appellant contends this testimony contradicts
that of Dennis and Contreras. However, this testimony does not necessarily contradict their
testimony, nor does it undermine the jury's verdict. Dennis and Contreras only testified that
the milk jug contained a liquid that appeared to be gasoline, they did not positively identify
its contents. Moreover, although Swindall testified that the test results excluded gasoline
as an accelerant, he also testified that medium petroleum distillate can consist of liquids
that, when poured into a milk jug, could look similar to gasoline. 

 After reviewing all the evidence in this case and giving due deference to the jury's
assessment of the witnesses' credibility and resolution of evidentiary conflicts, we cannot
conclude the great weight and preponderance of evidence contradicts the jury's verdict. 
See Watson, 204 S.W.3d at 417. Because the jury was rationally justified in finding guilt
beyond a reasonable doubt, we conclude the evidence is factually sufficient to support
appellant's conviction. See id. Appellant's second issue is overruled. 

 The judgment of the trial court is affirmed.

 


 _________________________

 DORI CONTRERAS GARZA,

 Justice

 

Do not publish. 

Tex. R. App. P. 47.2(b).

Memorandum Opinion delivered and 

filed this the 12th day of April, 2007.
1. There were two buildings on Moreno's property with a three-foot separation between them. The buildings
were divided into separate residential units with an upstairs and downstairs unit in each building. Moreno lived
in one of the units with his wife and son.
2. Appellant testified that the incident with the window occurred just three days before Moreno's home was set
on fire.
3. Miller testified that the fire department received the alarm at 9:22 a.m.
4. Swindall testified that a medium petroleum distillate is a class 3 ignitable liquid and is commonly used in
charcoal lighters, torch fuel, paint thinner, and in dry cleaning solvents.